## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RENATE ALDRIDGE, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | )        **No. 09-2178-CM-KGS** |
| **ALERITAS CAPITAL CORPORATION,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This case is before the court on the following motions: (1) Plaintiffs' Amended Application

for Preliminary and Permanent Injunction (Doc. 25); (2) Certain Defendants' Joint Motion to

Dismiss Plaintiffs' First Amended Complaint (Doc. 28); (3) Defendants' Motion to Stay Further

Action on Plaintiffs' Amended Application for Preliminary and Permanent Injunction Pending the

Court's Determination of Subject Matter Jurisdiction (Doc. 30); (4) Defendant First State Bank of

Gothenburg, Nebraska's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 48); and (5)

Defendants' Joint Motion To Extend Time For Filing Response to Plaintiffs' Amended Application

for Preliminary Injunction (Doc. 51).  For the reasons that follow, the court grants defendants'

motions to dismiss (Docs 28, 48); denies the remaining motions as moot (Docs 25, 30, 51); and

issues other orders as set out below.

### I.     Factual and Procedural Background

Plaintiffs are 127 individuals and businesses who purchased insurance agencies from Brooke

Capital.  Defendant Aleritas lent money to each of the plaintiff individuals and businesses for their

purchases.  Both Brooke Capital and Aleritas are subsidiaries of the Brooke Corporation, which is

comprised of a group of related companies ("the Brooke entities") that operate an insurance agency

franchise business.   Plaintiffs assert that they were defrauded by the Brooke entities.

### A.  Original Complaint and Application for Preliminary Injunction

In their original complaint, which named only Aleritas, plaintiffs alleged fraud, fraud in the inducement, negligent misrepresentation, and violation of the Racketeering and Corrupt Influences Act ("RICO"), 18 U.S.C. § 1962(a) and (d).

Plaintiffs assert that the Brooke Corporation built its network of franchises by (1) reselling existing agencies, or (2) offering a start-up agency program.  In the case of an existing agency, Brooke Capital would purchase the agency and sell it to a plaintiff "for the purchase price" pursuant to an "Agreement for Sale of Agency Assets."  Unbeknownst to plaintiffs, Brooke Capital's "Consulting Agreement" with the third-party seller required the seller to pay back 10 percent of the sale price.  As part of the purchase, plaintiffs entered "Franchise Plans" with Brooke Capital in which Brook Capital retained control of accounting, receipt of premium payments from customers, receipt of commissions from carriers, and was to pay 85 percent of commissions earned to the franchisee.  Plaintiffs also entered "Buyer's Assistance Plans," in which Brooke Capital was to provide consulting services in exchange for 50 percent of the agency's annual commissions.  Finally, defendant Aleritas financed the purchase by way of an "Agreement for Advancement of Loan."  Plaintiffs assert that "the Brooke entities, including defendant Aleritas, artificially inflated the value of agencies sold to plaintiffs"; and "the Brooke entities unjustly profited."  (Doc. 23, at 8.)

In the case of the start-up agency program, the Brooke entities entered a "Franchise Agreement" with plaintiffs, in which the Brooke entities agreed to provide a turn key operation, including office location, signage, equipment, support staff, insurance company appointments, customers, training, and advancement of funds.  Aleritas provided financing for the franchise fees

and operating expenses.  According to plaintiffs, "the Brooke entities never provided the services they promised."  (Doc. 23, at 9.)

Plaintiffs allege that their income streams consist primarily of commissions from premiums payments made by selling insurance policies.  Prior to August 2008, Brooke Capital's high deductions from the commissions owing plaintiffs, and delays in paying these commissions, made it difficult for plaintiffs to be profitable.  In August 2008, the Brooke entities stopped paying commissions altogether.  They filed for bankruptcy less than one month later.  The special master in charge of several of the Brooke entities, Albert Riederer, terminated the Franchise Agreements between Brooke Capital and plaintiffs, but plaintiffs assert they still have not received all the commissions owed to them.

Aleritas is the only Brooke entity that has not filed for bankruptcy, and is the only Brooke entity named as a defendant in this case.  Aleritas has sold, assigned, or otherwise transferred plaintiffs' loans and any interests it retained in plaintiffs' loans to various banks and lending institutions.

Various plaintiffs have received demand letters from the lending institutions now in control of their loans, attempting to collect on the loans.  In addition, plaintiffs assert that some of the lending institutions have been attempting to collect on the loans by requesting the insurance carriers to send commissions to them rather than to plaintiffs.  Plaintiffs filed a Motion for Preliminary Injunction (Doc. 7) – to "enjoin any efforts to collect these loan payments and plaintiffs' commissions, directly or indirectly, by any entities."

At a hearing on May 6, 2009, this court granted Aleritas's motion to strike and denied as moot the requested injunction because such an order would be unenforceable against the third-party lenders under Rule 65 because they were not parties and had received no notice.

**II.     Plaintiff's Amended Complaint and Amended Application for Preliminary Injunction**

Plaintiffs have since filed a First Amended Complaint (Doc. 23), naming Fifth Third Bank ("Fifth Third"); DZ Bank AG Deutsche Zentral Genossenschaftsbank ("DZ Bank"); The Bank of New York Mellon ("BNYM"), in its capacity as Trustee; Bayerische Hypo- und Vereinsbank, AG, New York Branch ("HVB"); First State Bank of Gothenburg, Nebraska ("FSB"); and NCMIC Finance Corporation ("NCMIC") (collectively, "the banks") as defendants. These banks, with the exception of FSB, now own plaintiffs' loans, due to Aleritas's transferring or assigning the loans or portions of the loans to them. Aleritas did not assign 100 percent of the loans, but retained some interest, to varying degrees. Defendant FSB made a loan to Aleritas and took a security interest in Aleritas's assets, including these retained interests. Aleritas assigned these retained interests to FSB after defaulting on this loan (in an amount exceeding $45 million).

To the claims against Aleritas set out in the original complaint, plaintiffs add a tortious interference with contract claim against the defendant banks, based on the banks allegedly contacting insurance carriers and demanding commissions be sent directly to them rather than to plaintiffs. Plaintiffs also assert that the banks are liable for Aleritas's tortious acts as assignees of the loans, or on an agency theory.

Plaintiffs have also renewed their motion for preliminary injunction. (Doc. 25.)

As in the original motion, plaintiffs allege that their businesses will not survive if all the defendants are not enjoined from:

(1) sending notices of default, intent to accelerate debts, or other demand letters relating to the loan agreements;

(2) filing negative information with any credit reporting agency regarding failure to pay under the loan agreements;

(3) contacting an insurance carrier in an effort to have the carrier send any commission for the sale of any insurance policy to a defendant or assignee rather than a plaintiff; and

(4) attempting to collect, through litigation or otherwise, on the loan agreements.  (See Doc. 25, at 7–8.)

Plaintiffs recently supplemented their amended application for preliminary injunction (Doc. 73).

## III.    Defendants' Motions

With the exception of FSB, all defendants, rather than responding to plaintiffs' motion for preliminary injunction, filed a Joint Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 28).

Defendants argue that plaintiffs' complaint must be dismissed for failing to meet the following rules:

Federal Rule of Civil Procedure 8, requiring a short plaint statement of the claim showing that the pleader is entitled to relief;

Federal Rule of Civil Procedure 9(b), requiring that claims alleging fraud, including claims arising under RICO, be pleaded with particularity;

Federal Rule of Civil Procedure 12(b)(6), authorizing dismissal for failure to state a claim upon which relief can be granted; and

Federal Rule of Civil Procedure 12(b)(1), authorizing dismissal for lack of subject matter jurisdiction.

Because this court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, the viability of plaintiffs' RICO claims may be determinative of this court's jurisdiction.  Defendants suggest that, if the court does not dismiss the state law claims, it should decline to exercise supplemental

jurisdiction over them.

Because of this, all defendants filed a Joint Motion for Order Staying Further Action on Plaintiffs' Amended Application for Preliminary Injunction Pending the Court's Determination of Subject Matter Jurisdiction (Doc. 30).

FSB filed its own motion to dismiss, (Doc. 48), for the same reasons as set out in the joint motion.

All defendants filed a Joint Motion for Extension of time for Filing Response to Plaintiffs' Amended Application for Preliminary Injunction (Doc. 51).

### IV.   Motion to Dismiss

#### A.  Common Law Fraud and RICO Claims

##### Pleading with Particularity

Rule 9(b) requires that, in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b); *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (holding that Rule 9(b) requires RICO predicate acts based on fraud be pleaded with specificity to provide clear notice of the factual basis of the predicate acts to defendants).

Defendants argue that plaintiffs' vague and conclusory allegations of fraud fail to satisfy the specificity requirements of Federal Rule of Civil Procedure 9(b) as to either their common law fraud claims or their RICO claims.  Plaintiffs respond that their allegations are sufficient.  But, if there are deficiencies, they are curable because "very specific details about each and every plaintiffs' transaction" and "facts of how the enterprise operated to defraud plaintiffs . . . could be included in an amended pleading if necessary."  (Doc. 58, at 2.)

In support of their fraud claims, plaintiffs allege that:

Aleritas and the other Brooke entities made the following misrepresentations and omissions in faxes, mailed correspondence, emails, and telephone conferences:
    a. the commissions that would be received, the time of payment of such commissions, and the adequacy of the information to be provided concerning the breakdown of the payment of commissions;
    b. the value of the agencies Plaintiffs were purchasing;
    c. omitting to inform Plaintiffs of the Consulting Agreements between the Brooke entities and the third party sellers of the insurance agencies;
    d. the value and accuracy of the consulting and valuations services provided by the Brooke entities; and/or
    e. other misrepresentations as to how the franchise relationship would operate.

(Doc. 23, at 12.)

In support of their § 1962(a) claim, plaintiffs' complaint alleges that plaintiffs:

. . . were induced into the agreements, including the loans and Agreement for Advancement of Loan, with the Brooke entities by both wire and mail fraud, this being the predicate activity of racketeering beginning in at least 2002. Plaintiffs were induced by the Brooke entities' material misrepresentations that were made specifically to induce Plaintiffs into the transactions, and Plaintiffs relied on these fraudulent misrepresentations to their detriment.

(Doc. 23, at 16.)

Plaintiffs' complaint then sets out the general racketeering scheme it attributes to Aleritas and the Brooke entities, stating:

One racketeering scheme that occurred works like this: The association in fact/enterprise consisted of The American Agency, Inc., The American Heritage, Inc., Brooke Capital Corporation, Aleritas, Brooke Corporation and other affiliated companies. The American Agency, Inc., and The American Heritage, Inc., or another Brooke company is represented to be [an] independent appraisal company, which "appraised" a third party agency, which is the target agency for sale. The appraisal company allegedly advises the target agency that the agency is worth a sum certain and charges a fee for this service through the Consulting Agreement. At the same time, the same appraisal company[,] which is also a subsidiary or affiliated company to Brooke Capital Corporation, advises the prospective purchaser (here, Plaintiffs) that it has performed an independent assessment of the target agency's commissions and value. The Brooke entities charge a substantial fee (approximately 50% of represented annual commissions of the target agency) for this service in the form of a Buyer's Assistance Plan (BAP). In association with these subsidiaries/affiliates, then, Brooke Capital purchases the target agency and then turns around the same day (or very soon thereafter) and sells it to Plaintiffs and adds unnecessary and duplicative

fees and expenses.  The net result is that the Brooke entities do no real evaluation of the target agency and Brooke Capital purchases the agency at a substantially lower price than they sell it to Plaintiffs.  Brooke Capital sells the agency to the prospective purchaser/Plaintiffs through a sales and franchise agreement, along with other ancillary agreements, and so makes a profit, unbeknownst to the Plaintiffs, on the sale price, and then profits by charging usurious interest in the financing of the agency, exorbitant and unearned fees, not paying full commissions to Plaintiffs and other unlawful actions.  The Brooke entities charge a fee for their analysis, which, in reality, is nothing more than a cursory review of the target agency's records.

Moreover, the fees are actually charged and credited to Brooke Capital.  The monies obtained therefrom are used to promote and operate the enterprise.  The representations made concerning the independence of the "appraisal" and the value of the target agencies is fraudulent, and is relied upon by the Plaintiffs in entering into the transaction with Brooke Capital and the loans from Defendant Aleritas.  These subsidiary/affiliated companies assume a distinct role in facilitating and masking the Brooke entities' fraud, and make misrepresentations and fraudulent omissions in order to induce Plaintiffs into the transaction, including the Agreement for Advancement of Loan.  Moreover, the decision to operate through subsidiaries and/or affiliated companies rather than divisions facilitated the unlawful activity of the enterprise.  The Brooke entities have entered into a number of these financing and franchising arrangements, all with the same entities and functions of these entities.  As a result, the Brooke entities have engaged in pattern and practice of racketeering activity.  This conduct has damaged Plaintiffs.

(Doc. 23, at 16.)

Elsewhere in the complaint, plaintiffs name certain individuals employed by the "Brooke entities." (Doc. 23, at 14.)  Specifically named is Shawn Lowry, president of Brooke Capital, who was "involved in every transaction and made all significant decisions, including setting the prices." His brother, Michael (Mick) Lowry, president of Aleritas, was "involved in every transaction." (Doc. 23, at 14.)  The complaint alleges that the Brooke entities "did no real evaluation of the agencies they sold to Plaintiffs" (Doc. 23, at 7); "unjustly profited by inflating the value and commissions of the agencies sold to plaintiffs" (Doc. 23, at 8); and "never provided the services they promised." (Doc. 23, at 9.)

Under Rule 9(b), plaintiffs must allege with particularity not only each element of a RICO

violation, but also the predicate acts of racketeering. *Phillips USA, Inc. v. Allflex USA, Inc.*, No. 92-2405-JWL, 1993 WL 191615, at *2 (D. Kan. May 21, 1993) (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 989 (10th Cir. 1992)). To properly allege the predicate acts, plaintiffs must specify the "who, what, where, and when" of *each* purported act. *Id.* (citation omitted).

As defendants note, although plaintiffs allege wire and mail fraud, plaintiffs do not identify the specific content of any misrepresentation, to whom or by whom the misrepresentations were made, or when they were made. Plaintiffs set out generally what they allege was a fraudulent scheme by the Brooke entities. Nevertheless, plaintiffs are 127 individuals and businesses. And their lawsuit is against Aleritas and six banks. The claims of each plaintiff arise from the individual circumstances of the transaction in which they purchased and/or financed the agency from Aleritas. The complaint fails to set out "the circumstances constituting the fraud, including such matters as the time, place, and content of false representations, as well as the identity of the person making the representation and what was obtained or given thereby." *Smith v. MCI Telecommunications Corp.*, 678 F. Supp. 823, 825 (D. Kan. 1987).

Additionally, allegations of conspiracy must be pleaded with particularity as well. "A complaint which merely implies, with the conclusory allegation of a conspiracy, that a defendant is responsible for someone else's fraudulent acts is insufficient." *Farlow*, 956 F.2d at 988–90, n.11. "Alleging a conspiracy to violate RICO requires particularity for what can be best described analytically as two agreements: one to a pattern of racketeering activity as defined by the statute, and another to the statutorily proscribed conduct." *Id.* (citing *Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F. Supp. 889, 895, 896 (N.D. Ill. 1987). The pleading is also deficient to the extent plaintiffs make allegations against "the Brooke entities" generally, and/or bases claims on the conduct of Brooke Capital rather than the defendant.

This circuit has agreed with the Second Circuit that "'(a) complaint alleging fraud should be filed only after a wrong is reasonably believed to have occurred; it should seek to redress a wrong, not to find one.' [citation omitted.] . . . '[A] plaintiff in a non-9(b) suit can sue now and discover later what his claim is, but a Rule 9(b) claimant must know what his claim is when he files it.'" *Farlow*, 956 F.2d at 990 (quoting *In re Tesoro Petroleum*, 467 F. Supp. 227, 250 (W.D. Tex. 1979) (*citing Segal v. Gordon*, 467 F.2d 602, 607–08 (2d Cir. 1972)).

The court finds that the complaint as crafted does not make specific factual allegations against the named defendants and fails to plead the common law fraud or RICO claims with the required particularity. Plaintiffs' complaint contains broad and conclusory language insufficient to give defendants notice of the specific conduct alleged. *See NL Indus., Inc. v. Gulf & W. Indus., Inc.*, 650 F. Supp. 1115, 1129-30 (D. Kan. 1986).

### Futility of Amendment

Defendants' motions also argue that, because plaintiffs have already had one opportunity to amend their complaint and failed to cure the "pervasive" flaws in it, they should not be given extra opportunities to replead facially insufficient claims. The court disagrees. Plaintiffs' first amended complaint was not filed in response to a Rule 9(b) or 12(b)(6) challenge, but was intended only to add parties and claims. As to the fraud and RICO claims contained in the amended complaint, the absence of particulars prevents this court from determining the plausibility of the claims. The court finds it possible that plaintiffs could plead facts that might cure the deficiencies in the complaint. Accordingly, as to plaintiffs' Count I (fraud, fraud in the inducement) and Count III (Civil RICO), defendants' motion to dismiss is granted with leave to amend as detailed below. *See Sheldon v. Vermonty*, 31 F. Supp. 2d 1287, 1294 (D. Kan. 1998).

However, as to plaintiffs' remaining claims of negligent misrepresentation, vicarious

liability, and tortious interference, the court considers defendants' arguments in favor of dismissal.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). The Supreme Court's plausibility requirement "serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1248 (10th Cir. 2008).

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court assumes as true all well-pleaded facts in the plaintiff's complaint and views them in a light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also* Fed. R. Civ. P. 8(a). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).

### B. Negligent Misrepresentation

Kansas courts recognize the tort of negligent misrepresentation as defined in Restatement (Second) of Torts § 552(1) , which states in pertinent part:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the

information.

See also *Mahler v. Keenan Real Estate, Inc.*, 876 P.2d 609 (1994); PIK Civ. 4th § 127.43.

Under Kansas law, "negligent misrepresentation applies to suppliers of commercial information in favor of users of such information in their commercial transactions" and "includes negligent supply of commercial information to others for guidance in their business transactions." *Gerhardt v. Harris*, 934 P.2d 976, 985 (Kan. 1997). Kansas courts have held that the cause of action does not apply to misrepresentation of intention to perform an agreement, but rather to typical cases of misrepresentation of factual, commercial information. *Bittel v. Farm Credit Servs. of Cent. Kan.*, 962 P.2d 491, 500 (Kan. 1998). Furthermore, to be actionable, a misrepresentation must be an affirmative statement of fact, as opposed to an opinion or omission. *Id*. at 501.

Plaintiffs allege that the Brooke entities, including Aleritas, "made representations to Plaintiffs in the course of the Brooke entities' business or in a transaction in which the Brooke entities had an interest"; that the Brooke entities, including Aleritas, "applied false information for the guidance of others"; "did not exercise reasonable care or competence in obtaining or communicating the information"; plaintiffs justifiably relied on the representations made by the Brooke entities; and that these representations proximately caused plaintiffs' injuries. (Doc. 23, at 16.)

The court finds that the claim, supported only by these conclusory allegations, cannot survive defendants' motions to dismiss. Even assuming their truth, the allegations of misrepresentations are never linked to defendant Aleritas. The complaint simply does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. at 555.

**C.  Vicarious Liability Allegations**

Plaintiffs' amended complaint alleges that their fraud, RICO, and misrepresentation claims

against Aleritas are chargeable against the bank defendants.  In support, plaintiffs state simply that

> The Bank Defendants knew or should have known of the fraudulent nature of the
> loans when the transfer, of whatever nature, occurred.  The Bank Defendants are
> liable for the tortious acts of Defendant Aleritas as assignees of [the] Agreements and
> loans.  In the alternative, the transfers created an agency relationship between
> Defendant Aleritas and the Bank Defendants, and the Bank Defendants are liable for
> the actions of Defendant Aleritas.

(Doc. 23, at 20.)   This unsupported conclusory allegation fails.  The bank defendants' status as

assignees of the rights to enforce or collect upon the loans or retained interests cannot, alone, render

them affirmatively liable for claims asserted against Aleritas.  *See Curtiss Simmons Capital Res.,

Inc. v. Edward Kraemer & Sons, Inc.*, 23 F. App'x 924, 929 (10th Cir. 2001); *LaBarre v. Credit

Acceptance Corp.*, 11 F. Supp. 2d 1071, 1076 (D. Minn. 1998), *aff'd in part, rev'd in part on other

grounds*, 175 F.3d 640 (8th Cir. 1999); *see also* 6 Am. Jur. 2d Assignments § 161 (1999) (an

obligor's claim against an assignee "cannot be used to impose liability on the assignee, unless the

assignee has assumed the assignor's duty of performance.").  On the facts alleged, the loans were, by

their terms, assignable in whole or in part by Aleritas without plaintiffs' consent.  Plaintiffs do not

allege that the bank defendants assumed Aleritas' obligations or liabilities.  Moreover, plaintiffs fail

to plead any facts whatsoever suggesting an agency relationship between Aleritas and any of the

bank defendants.  *See Turner & Boisseau, Chtd. v. Marshall Adjusting Corp.*, 775 F. Supp. 372,

377–78 (D. Kan. 1991).  Plaintiffs' failure to state a plausible claim on a theory of agency or

vicarious liability precludes them from asserting their fraud, RICO, and negligent misrepresentation

claims against the bank defendants.

### D.  Tortious Interference with Contract

The sole remaining claim against the bank defendants is one of tortious interference with

contract.  In their amended complaint, plaintiffs allege that the bank defendants, by contacting the

insurance carriers and demanding that all commissions be sent directly to them, "willfully and intentionally interfered" with contracts and/or business relations they knew plaintiffs had with these carriers, causing damage.

Kansas recognizes that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby. *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (1994) (citing *Turner v. Halliburton Co.*, 240 Kan. 1, 722 P.2d 1106, syl. ¶ 7, (1986)). Under Kansas law, the following elements are essential to recovery for tortious interference with contract: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Id*.

Here, the facts alleged are insufficient to support a plausible claim. First, plaintiffs have not alleged the existence, let alone the breach, of any contract that would support this claim. To the contrary, the court agrees with defendants that plaintiffs' complaint suggests that plaintiffs are not parties to the contracts with the carriers, and that, in any case, there has been no breach. This most basic element of breach of a contract must be alleged to state a claim for tortious interference with contract. *Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1288 (D. Kan.1997) (citing *Reazin v. Blue Cross & Blue Shield of Kan.*, 663 F. Supp. 1360, 1491 (D. Kan. 1987) (holding it is fundamental that the tort of interference with contract requires proof of breach), *aff'd*, 899 F.2d 951 (10th Cir. 1990)). Second, the facts alleged do not suggest that the bank defendants acted maliciously, or without justification, in seeking to collect on plaintiffs' loans. *Turner*, 722 P.2d at 1115 (holding tortious interference with a contract is predicated on malicious conduct by the defendant). Third, aside from conclusory allegations, there is no allegation of damage. Plaintiffs' claim for tortious interference against the bank defendants is dismissed.

Defendants' motions to dismiss plaintiffs' claims of negligent misrepresentation, vicarious

-14-

liability, and tortious interference are granted; the claims against the bank defendants are dismissed; and, as no claims remain against them, the bank defendants are dismissed from the action.

### E.  Leave to Amend

For the reasons discussed above, defendants' motions to dismiss plaintiffs' claims are granted.  Plaintiffs have 30 days from the date of this order within which to seek leave to amend their claims for common law fraud and RICO in accord with Local Rule 15.

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The decision to grant leave to amend a complaint lies within the sound discretion of the trial court.  *Viernow v. Euripides Devel. Ass'n*, 157 F.3d 785, 799 (10th Cir.1998).  The court finds it possible that plaintiffs could plead facts that might cure the deficiencies in the complaint.  Therefore, as a discretionary measure, the court grants plaintiffs leave to amend their complaint to conform with the pleading requirements imposed by rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.  *Sheldon*, 31 F. Supp. 2d at 1298.  The court is cognizant that, as a practical matter, specifically pleading the who, what, when, and where of frauds arising from numerous individual transactions with 127 plaintiffs may result in a voluminous pleading.  Plaintiffs acknowledge this in their reply.  However, they also represent that they are prepared to spell out the specific details, amounts and dates for each of the "seventy or so" different agencies that transacted with defendant, although they suggest that "such a task is probably better suited to discovery."

As a practical matter, this court is concerned that plaintiffs may have tried to do too much in one action.  That the claims arise from 70 different transactions involving 127 different plaintiffs raises issues of joinder, which this court will revisit if necessary.

### VI.    Amended Application for Preliminary Injunction

Because no claims remain against them, the bank defendants are dismissed from the action. Therefore, the court finds that plaintiffs' Amended Application for Preliminary and Permanent Injunction (Doc. 25), should be denied as moot.  As set out on the record at the May 6, 2009, hearing, the order plaintiff requests would not be enforceable against the banks.  Moreover, the undisputed evidence suggests that defendant Aleritas has not pursued or engaged (and cannot pursue or engage) in any collection efforts.  Therefore, no irreparable injury can be attributed to Aleritas's conduct.

**V.      Motion to Stay, Motion for Extension of Time**

For the reasons set out above, the court denies defendants' motion to stay further action on plaintiffs' application for preliminary injunction as moot.  Also moot is defendants' motion for extension of time to respond to plaintiffs' application for preliminary injunction.

**IT IS THEREFORE ORDERED** that, as to the claims of negligent misrepresentation, vicarious liability and tortious interference with contract, Certain Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 28) and Defendant First State Bank of Gothenburg, Nebraska's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 48) are granted.

**IT IS FURTHER ORDERED** that the bank defendants are dismissed from this action.

**IT IS FURTHER ORDERED** that, as to common law fraud and RICO claims, Certain Defendants' Joint Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 28) and Defendant First State Bank of Gothenburg, Nebraska's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 48) are granted, and plaintiffs have 30 days from the date of this order within which to seek leave to amend in accord with Local Rule 15.  If plaintiffs fail to do so within 30 days, the court will dismiss the action without prejudice without further notice.

**IT IS FURTHER ORDERED** that plaintiffs' Amended Application for Preliminary and Permanent Injunction (Doc. 25) is denied as moot

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Further Action on Plaintiffs' Amended Application for Preliminary and Permanent Injunction Pending the Court's Determination of Subject Matter Jurisdiction (Doc. 30) is denied as moot.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion To Extend Time For Filing Response to Plaintiffs' Amended Application for Preliminary Injunction (Doc. 51) is denied as moot.

Dated this <u>12th</u> day of August 2009, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**