# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RENATE ALDRIDGE, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | No. 09-2178-CM-KGS |
| **ALERITAS CAPITAL CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

This case is before the court on defendant Aleritas Capital Corporation's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 92). For the reasons that follow, the court grants the motion.

## I. Factual and Procedural Background

The factual and procedural background of this case has been set out in detail by the parties and in this court's prior orders. (Docs. 74, 80.) In short, plaintiffs are 127 individuals and businesses who purchased insurance agencies from Brooke Capital pursuant to Franchise Agreements. Defendant Aleritas lent money to each of the plaintiff individuals and businesses for their purchases, pursuant to Agreements for Advancement of Loan.[1] Both Brooke Capital and Aleritas are subsidiaries of the Brooke Corporation, which is comprised of a group of related

---

[1] Aleritas has sold, assigned, or otherwise transferred plaintiffs' loans and any interests it retained in plaintiffs' loans to various banks and lending institutions. Six of these banks (Fifth Third Bank ("Fifth Third"); DZ Bank AG Deutsche Zentral Genossenschaftsbank ("DZ Bank"); The Bank of New York Mellon ("BNYM"), in its capacity as Trustee; Bayerische Hypo- und Vereinsbank, AG, New York Branch ("HVB"); First State Bank of Gothenburg, Nebraska ("FSB"); and NCMIC Finance Corporation ("NCMIC")), were named by plaintiffs as defendants in this action, but have since been dismissed. And several of these institutions have filed enforcement actions against various plaintiffs, in this court and in others.

companies ("the Brooke entities") that operated an insurance agency franchise business. Plaintiffs assert that they were defrauded by the Brooke entities. Plaintiffs' claims, as set out in their Second Amended Complaint, are for common law fraud and violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(a), (b), (c), and (d) in relation to the loan agreements plaintiffs entered into with defendant. Upon defendant's motion, the court considers whether (1) plaintiffs state a cause of action under any of the four sections of RICO; and (2) if not, whether the court should exercise discretionary/supplemental jurisdiction over plaintiffs' common law fraud claims.

## II.    Discussion

### A.    Plaintiffs' claims under RICO, 18 U.S.C. § 1962(a), (b), (c), and (d).

To survive a motion to dismiss, a complaint must present factual allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555, 570 (2007); Fed. R. Civ. P. 12(b)(6). The allegations must be enough that, if assumed to be true, the plaintiff plausibly, not merely speculatively, has a claim for relief. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247–48 (10th Cir. 2008). "'Plausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the [plaintiff 'has] not nudged [its] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Under this standard, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177

(10th Cir. 2007). In ruling on a motion to dismiss for failure to state a claim, the court assumes as true all well-pleaded facts, as distinguished from conclusory allegations, and views those facts in the light most favorable to plaintiff. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007); *Moss v Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

RICO renders criminally and civilly liable "any person":

- who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an "enterprise" engaged in interstate commerce, § 1962(a);

- who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b);

- who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or, finally,

- who conspires to violate the first three subsections of § 1962, § 1962(d).

The primary purpose of the Act is to "attack the 'infiltration of organized crime and racketeering into legitimate organizations.'" *Burdett v. Harrah's Kansas Casino Corp.*, 260 F. Supp. 2d 1109, 1120 (D. Kan. 2003) (quoting S. Rep. No. 91-617, at 76). A civil litigant found to have violated RICO is liable for treble damages, costs, and attorney's fees. 18 U.S.C. § 1964(c); *see H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232–33 (1989).

The court has carefully scrutinized plaintiffs' voluminous third complaint, along with the parties' substantial briefing in relation to the instant motion. Defendant does not dispute the sufficiency of plaintiffs' allegations that defendant and the Brooke entities devised a scheme to

defraud franchisees, and, in furtherance of this scheme, engaged in multiple acts of mail and wire fraud, *see* 18 U.S.C. §§ 1341, 1343, which is encompassed in the term "a pattern of racketeering activity," 18 U.S.C. §1961(1); *see, e.g., Bridge v. Phoenix Bond & Indem. Co.*, __ U.S. __, 128 S. Ct. 2131, 2138 (2008). Therefore, presuming without deciding that the "pattern of racketeering activity" element can be met, the court evaluates the sufficiency of each of plaintiffs' four RICO claims.

### 1. Section 1962(a)

Section 1962(a) provides in pertinent part that:

"It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . . "

Defendant asserts that plaintiffs' § 1962(a) claim fails because it alleges injury only from the racketeering acts, not from the use or investment of racketeering income in the enterprise. The Tenth Circuit has held that, to state a valid claim under § 1962(a), a plaintiff must show injury from the use or investment of racketeering income. *Grider v. Tex. Oil & Gas Corp.*, 868 F.2d 1147, 1151 (10th Cir. 1989).

In support of their § 1962(a) claim, plaintiffs' complaint sets out two paragraphs. The first contains a description of the general racketeering scheme it attributes to Aleritas and the Brooke entities—the "enterprise," which generate fees and income by inducing plaintiffs to purchase insurance agencies through fraudulent misrepresentations. Plaintiffs assert that these fees are "charged and credited to Brooke Capital" and "the monies obtained therefrom are used to promote and operate the enterprise." (Doc. 83, at 141.)

The second paragraph asserts that the Brooke entities, along with Aleritas, used mail fraud to induce plaintiffs into "huge debts". . . "under unreasonable and usurious terms"; and that "by virtue of this investment in the agencies," Brooke and Aleritas used the agreements to "further defraud and oppress plaintiffs" into financial ruin, with the ultimate intent of seizing the franchises and reselling them to new "victims of the enterprise." (Doc. 83, at 141–42.) Thus, according to plaintiffs, the proceeds acquired by fraud were used to cause further damage to plaintiffs by "allow[ing] defendant (Aleritas) to 'acquire or maintain an interest' in the alleged enterprise by which it further damaged the [p]laintiffs . . . ." (Doc. 83 at 142.)

In response to the instant motion, plaintiffs assert that this case presents a "clear example" of where unlawfully acquired control of plaintiffs' businesses "was used to allow a criminal enterprise to exert additional control" over these legitimate small businesses, and "further defraud and damage" them.

The court cannot agree that the facts set out in plaintiffs' complaint present a clear example of a § 1962(a) violation. That section is concerned with the use of funds derived from a "pattern of racketeering activity" to acquire interests in, or invest in, or to operate legitimate enterprises. The parties agree that plaintiffs are required to allege injury arising from the use or investment of the funds. *Garbade v. Great Divide Min. & Mill. Corp.*, 831 F.2d 212, 213 (10th Cir. 1987); *c.f., Bumgarner v. Blue Cross & Blue Shield of Kansas, Inc.*, 716 F.Supp 493, 502–04 (D. Kan. 1988). Allegations that the predicate acts caused injury, or that the defendant reinvested racketeering income in an enterprise conducting unlawful activity will not suffice. *See, e.g., Lightening Lube v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993); *Protter v. Nathan's Famous Sys., Inc.*, 925 F. Supp. 947, 954 (E.D.N.Y. 1996).

Here, plaintiffs' complaint describes how the franchise and loan agreements damaged

plaintiffs. This is reflected in their prayer for relief, which seeks an award for damages, attorney's fees, expenses, court costs, along with pre and post-judgment interest; and a declaration that the loans subject to the Agreement for Advancement of Loan with defendant—and any interest thereon—are cancelled. (Doc. 83, at 146-47.) Nowhere in the complaint is there an allegation that any plaintiff actually sold its franchise back to Brooke or had it repossessed. Other than conclusory allegations, plaintiffs do not allege how defendant used funds derived from unlawful activities; they do not allege how defendant's use of funds caused any specific harm to plaintiffs, or even that it did. Nor do plaintiffs allege that the loans made to plaintiffs by defendant represented funds defendant obtained from a source prohibited by RICO. *See Garbade*, 831 F.2d at 213. The court finds that plaintiffs do not state a plausible claim to relief under § 1962(a).

### 2. Section 1962(b)

To state a claim under § 1962(b), plaintiffs must allege that defendant (1) acquired or maintained an interest in or control of (2) an enterprise engaged in interstate commerce (3) through a pattern (4) of racketeering activity or collection of an unlawful debt. *Tal v. Hogan*, 453 F.3d 1244, 1268 (10th Cir. 2006) (citing *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 296 (3d Cir. 1991)). As with other § 1962 claims, the injury must be attributable to the prohibited action. *Tal*, 453 F.3d at 1268. The Tenth Circuit has noted that § 1962(b) claims are uncommon because the first element requires sufficient allegations of "an interest in or control of" the enterprise, as opposed to mere "association" with it as required by § 1962(c). *Id*.

In support, plaintiffs allege that, "through its role as the financial arm," defendant "used the debts created by the loan agreements, which were procured by the mail/wire fraud, to gain control over the plaintiffs' own businesses—a control that defendant used, in conjunction with the Brooke entities, to further damage plaintiffs." (Doc. 83, at 143.) Plaintiffs conclude that, "[b]ecause

-6-

Aleritas exercised control over part of an enterprise engaged in racketeering activity, and that conduct has further damaged plaintiffs, plaintiffs seek recovery for violation of [§ 1962(b)]." (Doc. 83, at 143.)

Part of the problem with plaintiffs' § 1962(b) claim, which appeared for the first time in this Second Amended Petition, is that it appears to allege that the "enterprise" is the network of insurance agency franchises. If so, plaintiffs' claim fails to allege the kind of control required to state a viable § 1962(b) claim. "Interest in or control of" a RICO enterprise requires more than a general interest in results of its actions, or the ability to influence the enterprise through deceit; rather, it requires some ownership of the enterprise or the ability to exercise dominion over it. *Id*. at 1268–69. Plaintiffs have not, and cannot, allege that defendant's loan-making activities gave defendant an "interest in or control of" plaintiffs' legitimate insurance businesses.

Elsewhere in the complaint, plaintiffs allege that the RICO "enterprise" was made up of Brooke Corporation subsidiaries, including Brooke Capital and Aleritas. (Doc. 83, at 132–33, 140.) This theory, that defendant's loan-making activities gave it control or dominion over its sister entities, is also unsupported by the facts alleged. And, as discussed further in the following section, the complaint fails to allege the distinctiveness required between the "defendant" and the "enterprise."

### 3. Section 1962(c)

Plaintiffs' claim under § 1962(c) also makes its debut in this Second Amended Complaint. 18 U.S.C. § 1962(c) makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." To state a claim under § 1962(c), plaintiffs must allege that defendant

"'(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Abbott v. Chem. Trust*, No. 01-2049-JWL, 2001 WL 492388, at *15 (D. Kan. Apr. 26, 2001) (quoting *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1100 (10th Cir. 1999)).

According to plaintiffs' complaint, the "enterprise" was made up of Brooke Corporation subsidiaries, including Brooke Capital and Aleritas. (Doc. 83, at 132–33, 140.) Defendant asserts that plaintiffs' claim fails because a subsidiary is not considered an enterprise separate from its parent, and corporate families cannot be treated as an enterprise. (Doc. 93, at 7) (citing, *e.g.*, *Waddell & Reed Fin., Inc., v. Torchmark Corp.*, 223 F.R.D. 566, 600 (D. Kan. 2004); *Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1149 (10th Cir. 1998)). Plaintiff counters that, where the acts of a subsidiary aid to commit or conceal the fraud, the entities can be treated as separate, and that an association of corporate entities may form an enterprise that is separate and distinct from each member of that association. (Doc. 95, 9–16) (citing, *e.g.*, *Waddell & Reed*, 223 F.R.D. at 600; *Sunbird Air Servs. v. Beech Aircraft Corp.*, No. 89-2181-V, 1992 WL 135021, at *3 (D. Kan. May 29, 1992)).

Interestingly, the parties cite this district's body of caselaw—even the same cases—to support opposing propositions. While there are a number of cases, from within this circuit and others, discussing the "distinctiveness" required between person and enterprise, the court's research suggests that many of these cases are readily distinguishable on their facts, and that the parties' reliance on out-of-context statements in support of their propositions is misleading.

Based on this court's careful review of the relevant case law, plaintiffs' petition fails to establish the distinct "person" and "enterprise" needed for § 1962(c) liability. The court accepts plaintiffs' allegation that Aleritas and Brooke Capital worked together "in furtherance of a single -

business enterprise, for purposes of selling agency franchises, administering those franchises, and profiting from sales of agency franchises to the various plaintiffs." (Doc. 83, at 133.) Thus, plaintiffs allege a RICO enterprise. But even the most liberal construction of the facts alleged cannot support a claim that Aleritas is also the separate and distinct "person" defendant who victimized the corporate family or used it as a vehicle for unlawful activity.[2] *See Ad-X Intern., Inc. v. Kolbjornsen*, 97 F. App'x 263, 266–67 (10th Cir. 2004); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–63 (2001); *Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2001); *Brannon*, 153 F.3d at 1146; *Bd. of County Comm'rs of San Juan County v. Liberty Group*, 965 F.2d 879, 885 (10th Cir. 1992); *Dirt Hogs Inc. v. Natural Gas Pipeline Co. of Am.*, No. 9906026, 2000 WL 368411, at *3–4 (10th Cir. Apr. 10, 2000).

    **4.    Section 1962(d)**

18 U.S.C. § 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." By its terms, § 1962(d) requires that a plaintiff must first allege an independent violation of subsections (a), (b), or (c), in order to plead a conspiracy claim under subsection (d). *Tal*, 453 F.3d at 1270 (citing *United States v. Hampton*, 786 F.2d 977, 978 (10th Cir. 1986); *Schroder v. Volcker*, 864 F.2d 97, 98 (10th Cir. 1988)). If a plaintiff

---

[2] Plaintiffs allege that, as part of the "enterprise" made up of Brooke Corporation subsidiaries, Brooke Capital and Aleritas operated in a "joint venture in furtherance of a single-business enterprise for the purpose of selling agency franchises"; that "each Brooke Entity played a key role in an agreed plan to develop an income stream that was realized collectively by all of Brooke Entities"; and that Aleritas "acted as the finance company providing the loans that made the sales of these agencies possible, . . . and acted as a conduit for credit to prospective purchasers, so that all of the Brooke Entities could profit from continued sales of . . . franchise agencies and the fees and various other charges resulting from each sale." Further, the income generated through the franchise agencies, including collecting payments on the Aleritas loans from commissions paid on business underwritten by the agencies, "was shared collectively between the Brooke Entities, each of which played a necessary role in mak[ing] the business enterprise operational and had an equal voice in creating the agreements under which each franchise agency operated." (Doc. 83, at 133.)

has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law. *Id*. Because plaintiffs have failed to allege a sufficient claim under subsections (a), (b), or (c), their subsection (d) conspiracy claim fails as a matter of law.

### B. Common Law Fraud Claims

Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over plaintiffs' state claims if the court has federal question jurisdiction. But if the court dismisses all federal question claims, it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3); *Tal*, 453 F.3d at 1271; *Burdett v. Harrah's Kan. Casino Corp.*, 260 F. Supp. 2d 1109, 1122–23 (D. Kan. 2003). Having dismissed plaintiffs' federal claims, and finding no other basis for its jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining common-law claims of fraud and fraud in the inducement. Those claims are hereby dismissed without prejudice. *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138–39 (10th Cir. 2004); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998).

**IT IS THEREFORE ORDERED** that defendant Aleritas Capital Corporation's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 92) is granted.

**IT IS FURTHER ORDERED** that plaintiffs' claims arising under the Racketeering and Corrupt Influences Act, 18 U.S.C. § 1962(a), (b), (c), and (d) are dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' remaining common-law fraud claims are dismissed without prejudice.

Dated this 9th day of February 2010, at Kansas City, Kansas.

                                          **s/ Carlos Murguia**
                                          **CARLOS MURGUIA**
                                          **United States District Judge**